Weight, J.,
delivered the opinion of the Court.
The complainants, George R. Egnew and Eleanor Maxwell are the heirs of George M. and Jesse W. Egnew, deceased.
On the 24th of May, 1843, they caused an entry to be made in their names, in the entry taker’s office of Obion county, for 166 acres of land, in that county, by virtue of a certificate warrant issued to them on the 27th of August, 1842.
On the 3d of June, 1843, they caused two other entries to be made in their names, in the same office, *326 for lands lying in Obion county — one for 200, and the other for- 153|- acres.
These entries were also founded upon certificate warrants, issued to them by John S. Young, secretary and commissioner of West Tennessee — the one on the 29th of August, 1842, and the other the 20th of April, 1843.
All these entries were special, and a valid appropriation of the land.
It seems that no grants were issued upon these entries; and, on the 15th of September, 1851, the defendant, Cochrane, by virtue of the fees paid into the office, entered the same lands in his name, in the office of the entry taker of Obion county, he, at the time, being the entry taker for said county.
In making said entries, he did not pursue the requirements of the 18th section of the act of the State of North Carolina, passed in the year 1777, ch. 1. Grants have issued to him upon his entries.
In October and November, 1857, complainants, George R. and Eleanor, caused their entries to be surveyed, and the plats and certificates of survey, with the proper fees, were tendered by them to W. P. Hill, then the entry taker of said county, for the purpose of obtaining grants upon said entries: but he refused to receive the fees, or permit complainants to obtain grants, because of the entries in the name of defendant, Cochrane.
The object of this bill is to divest the legal title to these lands out of defendant, Cochrane, and to vest the same in complainants, George R. and Eleanor.
In making his entries, the defendant acted upon the assumption that the lands had become vacant by reason *327 of the hiatus, between the last of August and the 13th of November, 1851 — a period of two months and thirteen days — in the law, extending the time for making surveys and obtaining grants upon entries.
It is manifest, from reading the bill and exhibits, that' when he made these entries, he had both actual and constructive notice of the prior entries' of complainants, George R. and Eleanor.
The Chancellor dismissed the bill upon demurrer.
This decree is erroneous. The entries of complainants, George R. and Eleanor, being founded upon North Carolina land warrants, the case comes directly within the decision of this Court, made at the present term, in Fogg et al. v. Hill and Williams.
We need only refer to the opinion of the Court in that case, as decisive of this, without again stating its principles.
Another question is, whether Cochrane, being the entry taker, could, legally, make these entries for himself. The act of 1777, ch. 1, § 18, above referred to, provides that if any entry taker be desirous to make any entry of lands in his own name, such entry shall be made in its proper place before a justice of the peace of the county — not being a surveyor or assistant— which entry the justice, shall return to the County Court at their next sitting; and the County Court shall insert such entry, and every entry made by or for such ■ entry taker in any other manner than is herein directed, shall be illegal and void, and any other person may enter, survey, and obtain a grant for the same land.
It is argued that this section of the act of 1777— if it ever was the law of this State — has become obsolete, *328 or been repealed, and, in anj event, is inapplicable to that portion of the State which lies south and west of the Congressional Reservation Line. It seems not to have been considered as repealed or obsolete, bj Messrs. Haywood & Cobb, and is preserved in their Revisal of the Statutes of Tennessee, and not embraced in the “ table of repealed and obsolete laws.” 2 Haywood & Cobbs’ Rev., 20, 190.
It is clear that it originally applied to the entire vacant territory of the State of North Carolina, extending as far west as the Mississippi river, and including these very lands. Acts 1777, ch. 31; 1783, ch. 2, § 3, (1 Scott’s Rev., 221, 267;) 2 Meigs’ Dig., 662. And it is equally plain that it was in force and use in the State of North Carolina at the time of the passage of the Cession Act of 1789. Tyrrell v. Mooney, 1 Murphey, 375, 401; Terrell et al. v. Logan, 3 Hawks., 319. And, therefore, became a law of the ceded territory, and of the State of Tennessee upon the adoption of the Constitution of 1796.
The Cession Act provides that the laws in force and use in the State pf North Carolina at the time of its passage, shall be, and continue in full force within the ceded territory, until the same shall be repealed, or otherwise altered by the legislative authority of the said territory. And in the Constitution of this State, in 1796, it was declared that all the laws then in force and use in said territory, not inconsistent with the Constitution, should continue to be in force and use in this State until they should expire, be altered, or repealed by the Legislature. The Constitution of 1834 has a clause to the same effect.
*329 We are not able to perceive that tbis section of the act of- 1777 has expired, or become obsolete. It is, upon the face of it, perpetual, -without limitation or time fixed when it shall cease to be in force; and we are bound to give it effect, in every case which falls within its provisions, until it is repealed by the Legislature. Brice v. The State, 2 Tenn. R., 255, 256. It may be that no entry has been made under its requirements, even for half a century. But how are we to know that? The record does not inform [us. how the fact is. And if it were so, we do not understand that a statute can be repealed by non-user. The want of individual cases under it, or the existence of a series of cases in violation of it, ought not, we apprehend, to destroy the law. Dwarris on Statutes, 9 Law Library, 29, top page; Brice v. The State, 2 Tenn. Rep., 255, 256, 257, 258.
. Then has it been repealed, or so altered by the Legislature, as to enable us to dispense with its provisions ? It is insisted it has upon various grounds.
First. It is said the act of 1777, if ever of force, being so only by the Cession Act and the Constitution of 1796, any alteration of it by the legislative, authority of the territory or State, though it did not touch the 18th section would satisfy the Cession Act and the Constitution, and put an end to the entire act; and that such an alteration having been made as early as 1799 and 1801, this section is not now in force in this State, nor has been for half a century. This position is untenable. The repeal of a statute may be total, or only partial, according to the will of the Legislature; and we know of no difference, in this respect, between the statute of the State of North Carolina, made of force here by the *330 Cession Act and Constitution, and one of our own enacting. And that there is no such difference, will appear from the authority of Brice v. The State, 2 Tenn. R., 258, 259. See, also, State v. Patterson, 2 Ird. R., 356. Unless the section itself has been repealed, or altered, it must he declared in force.
Secondly. It is said to he repealed hy the 6th section of the act of 1801, ch. 3, (1 Scott, 672,) which provides that no entry taker in this State shall receive or admit any entry or location to be made in his or their office, unless the person applying to make such entry first make oath that the claim or warrant on which such entry or location is founded, is equitable, just, and legal, to the best of his knowledge and belief; which oath the entry taker is empowered to administer. Nor shall any entry taker,- for himself, make any entry but on oath as aforesaid, before some justice of the peace of his county, which justice shall subscribe his name officially to such entry. We perceive no conflict between these two sections, and are of opinion 'they may both stand -together. Dwarris, 9 Law Lib., 31. It certainly was not the intention, as we think, hy anything in this act, to supersede the requirements of the 18th section of the act of 1777. And if it had been, the former act is expressly repealed by the 37th section of the act of 1806, ch. 1, (1 Scott, 305,) and thereby the 18th section of the act of 1777 is revived. Dwarris, 9 Law Lib., 32.
Third. The system of obtaining grants to land through the offices of county entry taker and surveyor, established hy the act of 1777, was changed hy the act of 1806, ch. 1, to the district system, and the office of principal surveyor created; and - he required to per *331 form the duties of both the entry taker and ■ surveyor. This continued to he the case until 1836, when the system of county offices was restored, and an entry taker and surveyor for each county again elected. Act 1835-6, ch. 48. It is now insisted that this change was a repeal of the 18th section of the act of 1777. We do not assent to this argument. The necessity for this law is the same under either system. It was immaterial in whose hands might be confided the duties of the entry taker, so long as lands remained to enter the propriety of this law could not be questioned, unless an entry, by the entry taker or surveyor, for himself, were altogether prohibited.
In an examination of the changes and modifications which the land law of this State has undergone, we have not been able to discover anything in the act of 1819, or other legislation of the State, which either repeals or alters this section of the act of 1777; but much to the contrary. And the fact that during all this time, while many portions of the system have been amended, altered and repealed, even the oath required in the act of 1801, a thing closely connected with the subject, being expressly repealed, no notice,- whatever, has been taken of this section — so far from being an argument against it — is evidence that the legislature was content with it, and purposely omitted its repeal. Dwar-ris 9 Law Lib., 50. And it would certainly be going a great way to hold that the repeated legislation of this State, defining the duties of entry taker in general terms, and, evidently, as we think, in regard to entries to be made by others, should have the effect of repealing the special and particular provision ■ in regard to *332 entries to be made by himself, to be found only in the act of 1777. Dwarris, 9 Law Lib., 86.
Finally. It is argued that it has been the constant p>raetice of surveyors and entry] takers south and west of the Congressional Reservation Line, to make entries in their own names and for themselves — without the intervention of a court, or justice of the peace, and it is believed that not a single instance can be found in the reservation, in which the requirements of the 18th section of the act of 1777, have been complied with, although hundreds of entries have been made by said officers in their own names, and many thousand acres of land thus appropriated. And it is insisted that this practice and usage of these officers, called into action when the statutes were new, and acquiesced in for so long a time by the whole community, furnish contemporaneous construction of them binding upon the courts, and that serious would be the consequences to hold differently at this day.
Rut how do we know anything of the existence of this practice and usage ? It is not alleged in the bill, or anywhere shown in the record. We cannot judicially know it. It is not embodied in any judical opinion or public record of which we can take cognizance. Like any other fact it must be alleged and proved. 2 Greenl. Ev., secs. 248 to 252; 1 Id., secs. 4 to 6; Smith v. Wright, 1 Caine’s R., 43.
In the cases in 1 Yer., 376, and 1 Cranch., 299, to which we have been referred, the evidence of interpretation was drawn from judicial decisions. But if we had evidence of this practice, is it true that repeated violations of a law through a series of years, by *333 the very- parties interested in its infraction, can be received by the courts as material for the application of the doctrine of contemporaneous construction ? I will not say, without further argument, that usage may not, in some cases, be pleaded to assist the Court in the construction of a doubtful statute. But certainly it must be received with great caution and care taken not to transgress the limits of the law. The King v. Miller, 6 T. R., 269. The principle of contemporaneous construction has been considered applicable to statutes where the' words are obscure, or doubtful, and generally, we believe, has been founded upon the judicial determinations of the country. An eminent judge has said, that great regard ought, in construeing a statute, to be paid to the construction which the sages of the law, who lived about the time, or soon after it was made, put upon it; because they were best able to judge of the intention of the makers at the time when the law was made. Dwarris, 9 Law Lib., 42.
We are, therefore, driven to the conclusion that the 18th section of the act of 1777, is not inapplicable to that portion of the State south and west of the Congressional Reservation Line, and that it is to be regarded by us as in force and use. But it is not necessary, in this case, conclusively so to adjudge, though we do not see how it is to be escaped.
Upon common law principles, the entry taker cannot, as we think, make an entry in his own name, before himself, because it is against • public policy. No such thing was contemplated, as we are satisfied, any where in our landed system. His interest would, in many cases, conflict with his duty. Not that there has *334 been anything intentionally wrong in this particular case. The high character of the gentleman who filled the office forbids any such supposition. But as a rule of law founded in public policy, for wise reasons, it cannot be allowed in any case. It is upon the same reasoning that a sheriff is not permitted to buy at his own sale, or execute his own writ — nor a surveyor to make his own survey — nor a clerk to take the probate of his own deed. Avery v. Walker, 1 Hawks, 140; Greenler v. Tate et al., 1 Dev., 300.
That the principle is applicable here, we have only to examine our legislation. By the act of 1836, restoring the office of county entry taker, he is to be governed by the same law as the surveyors, while acting as entry takers, had been, under the act of 1819 and other acts. How could he select arbitrators to value improvements, under the 12th section, to be paid for by himself, in case his own entry conflicted vjith the settler ? Or conduct the drawings for priority of entry under the 16th section? Or, if one or more persons offer to enter the same land, at the same time with himself, how could he have the priority between them determined by lot under the 17th section? He is to demand and receive fees. Sec. 47. Does this mean of himself? By the 10th section of the act of 1842, ch. 34, the enterer is to tender to the entry taker his location, and the same is to remain on file twenty days before he records it; and if then no person files just reasons in writing against it, the entry taker shall record it; but should just reasons be filed with the entry taker why such entry should not he made, he shall not record the same until *335 the dispute - shall he settled. How could he, in Ms own case, determine as to the reasons against the entry ?
Under the act of 1843, the entry taker had to dispose of the public land to the highest bidder, through offers to be made him, and the person paying the most for the land become the enterer, and obtained the grant. How is it possible here'to suppose, that the entry taker could, himself, be permitted to take and enter any of the lands so offered ? Maxwell v. Wallace, 3 Ird. Eq. R., 593.
Rut it is useless further, to multiply instances. The whole current of our legislation, it seems to me, demonstrates that he was not to make his own entry before himself.
What is to be the effect upon a grant thus obtained by. the entry taker — whether it is to be regarded as void, and- open to attack in a court of law, or only voidably at the suit of the party aggrieved in a court of equity — we need not here decide, because complainants have the oldest entries, and standing as they do, in a court of equity, have a right to have the defendant, Cochrane, declared a trustee for them, and a legal title decreed to them. 1 Mur., 401; 4 Dev., 417, 596 ; 2 Dev. and Batt., Law Rep. 246.
It seems, however, to have been decided in North Carolina to be only voidable. Tyrrell v. Mooney, 1 Mur. 401.
Nor are we called upon to decide as to the case of a purchaser under such a grantee, nor whether one holding a younger entry and grant can call in question the prior grant of the same land to' the entry taker. These are questions not necessarily in this case, and we do not in *336 tend now to determine them. 1 Mur., 401; 1 Hawk., 140; 2 do., 231; 3 do., 319; 1 Dev., 300; 2 Mur. 375; 4 Dev., 417, 596; 2 Dev. and Batt. Law R., 246; Jackson v. Lawton, 10 Johns. R., 23; 4 Hum., 203; 1 Sneed, 134; 2 Sneed, 674.
And it is alike unnecessary for us to put a construction upon the second section of the act of 1853, ch. 24 — since it is palpable it does not help the defendant in the present controversy.
The decree of the Chancellor will be reversed, and the cause remanded for an answer.